[No. 2594.]

## JOHN DAY v. THE STATE.

OBSTRUCTING PUBLIC ROAD—FACT CASE.—A conviction for obstructing a public road was had upon evidence which showed that, according to the report of the jury of review who delineated the road in question, its route followed the boundary line between two adjoining surveys, but that, as actually laid out on the ground, the road ran some two hundred yards from said boundary line; that the reported route was never laid out or marked upon the ground, and had never been used or worked as a public road; whereas the actual road had always been the route used by the public, and had been worked by the road overseers of the county. The obstruction consisted of the enclosure by appellant of the reported route, never laid out, marked, used or worked as a public road. *Held*, that, until authoritatively discontinued, the true road was that actually used by the public and recognized by the county authorities, and not the route delineated in the report of the jury of review, but never opened, used or worked. Hence, the proof does not sustain the conviction.

APPEAL from the County Court of Denton. Tried below before the Hon. C. C. Scruggs, County Judge.

The appellant was convicted of obstructing a public road leading from Elizabethtown, in Denton county, towards Aurora, in the county of Wise. The penalty assessed against him was a fine of one hundred dollars. His motion for a new trial was overruled, and he gave notice of appeal.

The State first introduced in evidence the order of the Commissioners' Court of Denton county, approving the report of a jury of review, which laid out the public road alleged to be obstructed. That report, after describing the various meanders of the surveyed road, locates its general course contiguous to the alleged obstruction, as between two surveys of land known as the Tidings and Cardenas surveys. So much of the report as relates to the course of the proposed road, with respect to these two surveys, reads as follows:

\*    \*    \*    "Thence west to the southeast corner of the J. Joy survey. Thence west on the line of said Joy and Matany survey to the east boundary line of the Charles Tidings survey. Thence north on the line between the Joy and the Tidings surveys to a point opposite the southeast corner of the G. Car-

denas survey. Thence west across the ell of the Charles Tidings survey to the southeast corner of the G. Cardenas survey, continuing west between the last named surveys to the southwest corner of the G. Cardenas, and the southeast corner of the W. C. Hallmark survey and the northeast corner of the J. Burns survey." * * * * *

Thomas Helm testified, for the State, that the Tidings survey lies south of and adjoining the south boundary line of the G. Cardenas survey. The Tidings survey is claimed by the defendant, and is enclosed, the fence having been put up over a year previous to this trial. The fence was first put north of the north boundary line of the Tidings survey, but, upon the survey of the Cardenas, that fence being found north of the line, was moved back about eight feet south of the line, at the southeast corner of the Cardenas survey, and about the line at Henrietta creek, which is about two hundred yards west of the southeast corner. West of the creek it was put south of the line, to the corner, which is more than a mile in distance. There was no traveled road along the south boundary line of the Cardenas survey at the time the defendant's fence was put up, nor had there ever been within the knowledge of the witness. When the Commissioners' Court ordered this road laid out the witness had lived in that neighborhood ten years. The Tidings and Cardenas surveys were both unenclosed. The defendant then had the Hallmark survey, and a part of the Butler survey south of the Hallmark, enclosed. To run a road on the south line of the Cardenas, and west as called for by the court, would run it through the land of the defendant, which, at the time the order was made, had been enclosed for some time. At the time the order was made there was a gate near the southwest corner of the Cardenas survey leading into the defendant's enclosure, and another at the west side of the enclosure.

When the defendant's fence was put up over a year ago, the traveled road ran about two hundred yards north of the southeast corner of the Cardenas survey, and from two hundred to four hundred yards north of the south boundary line of the Cardenas survey, and north of the defendant's enclosure on the Hallmark survey, which lies west of the Cardenas survey. This road was laid out by Ed. Manning, as road overseer, in 1876, had a couple of mile posts on it, and had been once or twice worked as a public road by the overseer and hands. The Cardenas survey was not enclosed when the Tidings survey was.

It was four or five hundred yards north of the defendant's fence to any enclosure. The witness and others enclosed the Cardenas survey about four months ago. They put their fence fifteen or eighteen feet north of the south boundary line of the Cardenas survey, and left only a space of fifteen or twenty feet between theirs and the defendant's fence. The road was opened by Ed. Manning, road overseer, when it was traveled north of the south boundary line of the Cardenas survey and north of defendant's enclosure on the Hallmark survey, because defendant's gates through his enclosure were closed up. The traveled road has been traveled as the Elizabethtown and Aurora road, and kept up as such, ever since it was opened five or six years ago. The defendant had never, within the knowledge of the witness, obstructed the traveled road, and travel on that road was never, that the witness knew, interrupted since it was opened, until witness and others enclosed the Cardenas survey about four months ago.

A. F. Wiggs was next introduced on behalf of the State. He testified that he was one of the jury of review and wrote the report. The material part of his testimony was elicited by the question (which was objected to), whether or not it was the intention of the jury of review to place the road at the southeast corner of the Cardenas survey and on the line of the Cardenas and Tidings surveys, and from there west. The witness replied:

"It was our intention to place said road on the line of the Cardenas and Tidings surveys. I knew when I wrote the report of the reviewers that the road as called for in the report would run through the enclosure of the defendant on the Hallmark survey, west of the Cardenas and Tidings surveys, and we did not have the written consent of the defendant to run or lay out said road through his enclosure. There never was, within my knowledge, any road opened or traveled on the line of the Cardenas and Tidings surveys. The last time I traveled said road (Elizabethtown and Aurora road), it was opened and traveled one hundred yards or more north of the line and north of the. southeast corner of the Cardenas survey, and north of the defendant's enclosure on the Hallmark survey, and near where we rode across the country when we went to review said road. When I was there last there was no traveled road on the line of the Cardenas and Tidings surveys. When we reviewed said road the Cardenas and Tidings surveys were both unenclosed. It was a prairie country."

Several other witnesses, both on behalf of the State and the defendant, were introduced and testified upon the trial. They concurred in the statement of the witnesses whose testimony is given, that the road designated by the jury of review, running on the line of the Cardenas and Tidings surveys, which is the one alleged to have been obstructed, was never opened, used or traveled as a public road, and that the road actually traveled and used, and recognized as the Elizabethtown and Aurora road, lay north of that line, north of the Cardenas southeast corner, and north of the defendant's enclosure on the Hallmark survey.

The motion for new trial attacked the action of the court upon a motion to quash the information; the exclusion of certain evidence; the rejection of certain charges asked; denounced the charge as given, and assailed the verdict as contrary to law and evidence.

*J. A. Carroll* and *H. C. Ferguson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

*J. A. Gordon*, also for the State: First, in order to bring a public highway within the meaning of Article 405 of the Penal Code, it is not necessary that said highway should have been actually used by the public in travel. As soon as the report of the jury of view is received and approved by the Commissioners' Court the road is ordered to be opened, and at once becomes dedicated to the public use as a public highway; and a party obstructing or resisting the opening of such road would be guilty of "obstructing a public highway." Any other construction would place it within the power of one selfish, contrary man to defeat the opening of any public road. He would only have to enclose said highway before the public had time to travel over same.

Second, the court's definition of a public road in this case was substantially correct. Certainly "a road established by order of the Commissioners' Court" is a public road, and if this definition is not entirely full, it is not an error of which appellant can complain. After a road has thus been established, it is not discontinued by the failure of the public to travel in the exact roadbed. A temporary travel a few hundred yards away from the roadbed would not be such discontinuance as would authorize the enclosure of such road. The court is correct in the instruction

that a public road must be discontinued by order of Commissioners' Court. (Rev. Civil Stat., Arts. 4360 and 4366).

Third, there is nothing in the evidence of this case to raise the question of limitation. Consequently it was not incumbent on the court to charge the jury upon that subject. (*Vincent* v. *The State,* 10 Texas Ct. App., 333; *Hoy* v. *The State,* 11 Texas Ct. App., 33). In this case the evidence shows the fence to have been built within two years from date of filing the complaint. Besides, the offense was not dependent on the time of building the fence. If appellant refused to move the obstruction after having been notified so to do by the road overseer, or to permit the same to be removed, he was guilty of obstructing the road, without reference to the time of building such obstruction, whether he himself built such obstruction or not.

These are the only assignments of error deemed of sufficient importance for notice. The judgment of the court below is fully sustained by the facts and record of the case, and should be affirmed.

WILLSON, JUDGE. It is charged in the information that the appellant "did unlawfully and wilfully obstruct and cause to be obstructed a public road," etc., describing the road. An exception was made to the information that it charged two offenses, and was therefore duplicitous. This exception was properly overruled. Where a statute makes it penal to do this *or* that, mentioning several things disjunctively, an indictment or information may, in a single count, embrace all the prohibited acts by charging them conjunctively. (*Copping* v. *The State,* 7 Texas Ct. App., 61.) Besides, in misdemeanors the joinder of several offenses in the same indictment or information will not, in general, vitiate in any stage of the prosecution. (*Gage* v. *The State,* 9 Texas Ct. App., 259.)

It is shown by the evidence that in 1876 the Commissioners' Court of Denton county appointed a jury of review to lay out a road in said county leading from Elizabethtown to Aurora. This jury made a report of their work to said court, which was approved. It appears that the road as actually laid out and marked upon the ground by the jury was not upon the exact line described in their report, but was some two hundred yards north of said line. This line described in the report of the jury was never actually laid out upon the ground, nor was any road ever opened upon it, nor has it ever been used as a road; but the road

which was actually laid out by the jury was opened up, and has been used by the public ever since, and has been worked as a public road by overseers appointed by said court. It was for obstructing the line of road described in the report of the jury, and not the road that was actually laid out, opened and used, that the defendant has been convicted.

We are of the opinion that this conviction is erroneous. It was the duty of the jury of review to "lay out and mark" the road, not only upon paper, but upon the ground. (Acts 1876, p. 64, sec. 8; Rev. Stats., Art. 4369.) And when, as in this case, the report describes a line of road different from the one actually laid out, marked, used and recognized as the true road, we are clearly of the opinion that the latter should be considered the true road until authoritatively discontinued. It is shown that the road actually laid out and marked has been recognized and used as a public road for five years, and been worked as such under authority of the Commissioners' Court; while the imaginary line of road, for the obstruction of which the defendant has been convicted, was never laid out and marked upon the ground, nor opened as required by law (Acts 1876, p. 65, sec. 13; Rev. Stats., Art. 4370), and has never been used as a road.

Under this state of facts we think the prosecution is estopped from now claiming that the road described in the report of the jury of review is *the* public road, instead of the one which was actually laid out, marked, recognized and used as such.

We think the verdict of the jury is unsupported by the evidence, and for this reason the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered April 11, 1883.